UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------X
:
ON-LINE TECHNOLOGIES, INC.,    :
:                     3:99CV2146 (JGM)
v.                             :
:
PERKIN-ELMER CORP., ET AL.     :     DATE: JULY 13, 2005
:
----------------------------------------------X

## RULING ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS

Although familiarity with the factual and procedural history of this complex litigation is presumed, a brief history relevant to the pending motion follows. Plaintiff commenced this action on November 3, 1999 (Dkt. #1), followed by a First Amended Complaint on December 7, 1999 (Dkt. #3), a Second Amended Complaint on February 29, 2000 (Dkt. #25), and a Third Amended Complaint on September 20, 2002 (Dkt. #196).  The Third Amended Complaint asserted five counts: patent infringement of plaintiff's U.S. Patent No. 5,440,143 ["'143 Patent"], which covers a "Long Path Gas Cell" (First Count); misappropriation of trade secrets (Second Count); breach of contract (Third Count); fraud (Fourth Count); and unfair competition and unfair trade practices (Fifth Count).  The four defendants were: The Perkin-Elmer Corporation, LLC ["defendant PEC"], a New York corporation; defendant Bodenseewerk Perkin-Elmer, GmbH ["defendant Bodenseewerk"], a German corporation that is a wholly owned subsidiary of defendant PEC; defendant Perkin-Elmer, Inc. ["defendant PEI"], a Massachusetts corporation; and defendant Sick UPA, GmbH ["defendant Sick UPA"], a German corporation that is a wholly owned subsidiary of Sick, AG[1]. Defendants filed their Answers, affirmative defenses, and counterclaims on April 11,

---

[1]On February 2, 2001, Sick AG was dismissed as a defendant for lack of in personam jurisdiction. (See Dkt. #56).

2000 (Dkt. #32) and on May 8, 2002 (Dkt. #152). Plaintiff filed its Answer and affirmative defense to the counterclaim on May 3, 2000. (Dkt. #36).[2] The case was first referred to this Magistrate Judge on March 27, 2001 (Dkt. #66) to supervise discovery. (See also Dkts. ##140 & 176).

On June 10, 2002, defendants filed three motions for summary judgment – one which related to the First Count (Dkt. #160) and two which concerned the four remaining counts (Dkts. ##164 & 169). On March 31, 2003, United States District Judge Bond Arterton issued a ruling (Dkt. #210), which granted all three motions. See also 253 F. Supp. 2d 313 (D. Conn. 2003). Plaintiff initially filed its Notice of Appeal on April 24, 2003 (Dkt. #211), but the parties ultimately agreed to a stipulation of dismissal with respect to defendant PEC's counterclaim. (See Dkts. ##212, 214-17). One year later, on March 24, 2004, plaintiff filed a revised Notice of Appeal (Dkt. #218), and on October 19, 2004, the Federal Circuit issued a decision which affirmed Judge Arterton with respect to the Second through Fifth Counts, but which remanded regarding the First Count, as it found that Judge Arterton had erroneously construed Claim 1. (Dkts. ##220-21. See also 386 F.3d 1133 (Fed. Cir. 2004)). The only defendants remaining in this lawsuit are Defendant PEC, Defendant Bodenseewerk, and Defendant Sick UPA, named in the First Count. (Dkt. #196, at 14).

Upon remand, Judge Arterton filed another Scheduling Order on January 12, 2005 (Dkt. #222), and pursuant to such order, on March 11, 2005, defendants filed their Motion for Summary Judgment (Dkts. ##224-28), which is pending before Judge Arterton. (See also

---

[2]United States District Judge Janet Bond Arterton issued a number of Scheduling Orders, regarding the completion of discovery here – on February 22, March 27, and May 2, 2000, October 22, 2001, and January 4, 2002 (Dkts. #21, 30, 34, 93 & 110), the last of which set April 15, 2002 as the deadline for the completion of discovery.

Dkts. ##232-34 & 240).   On March 11, 2005, the parties also filed a Stipulation Concerning U.S. Patent No. 5,440,143 (Dkt. #229)["March 2005 Stipulation"], which was approved by this Magistrate Judge six days later.  (Dkt. #230).

On April 15, 2005, defendants filed their Motion to Preclude Plaintiff's Assertion of a New Theory of Patent Damages and brief in support, under seal (Dkts. ##238-39); this motion is pending before Judge Arterton.  (See also Dkts. ##241, 243-45 & 247).

On May 4, 2005, defendants filed a Motion for a Protective Order and to Quash Subpoenas (Dkt. #242),[3] pending before this Magistrate Judge. Three weeks later, plaintiff its brief in opposition. (Dkt. # 246).[4] On June 7, 2005, defendants filed their reply brief. (Dkt. #248).[5]

For the reasons stated below, defendants' Motion for Protective Order and to Quash Subpoenas (Dkt. #242) is granted.

## I. FACTUAL BACKGROUND

---

[3]The following three exhibits were attached: affidavit of defense counsel, dated May 3, 2005 (Exh. A); copy of affidavit of Heimo Breton, Managing Director of SICK-Maihak, GbmH, dated February 17, 2005 (Exh. B); and copy of e-mail correspondence between counsel, dated April 20, 2005 (Exh. C).

[4]The following five exhibits were attached: copy of the Federal Circuit's decision, filed October 13, 2004 (Exh. 1); copy of the March 2005 Stipulation (Exh. 2); transcript from a status conference before Judge Arterton on January 10, 2005 (Exh. 3); copies of plaintiff's subpoena on Daryl Schillemat of Corning NetOptix, dated April 5, 2005, and Notices of Deposition on defendant PEI, on defendant Sick UPA, and on defendant PEC, all dated April 20, 2005 (Exh. 4); and copy of affidavit of Robert Hoult, of Perkin-Elmer Ltd., sworn to March 11, 2002 (Exh. 5).

[5]The following two exhibits were attached: copy of correspondence between counsel, dated March 16, 2005 (Exh. A); and copies of specification sheets, dated January 14 and November 16, 1998 (Exh. B).

On January 10, 2005, Judge Arterton held a lengthy status conference to ascertain counsel's position on "what remains to be done with the case following its remand from the Federal Circuit on the claim construction." (Dkt. #246, Exh. 3, at 4).[6] Plaintiff's counsel responded that "we need some more discovery," because "[o]ur damage model is outdated, it's from March of 2002," so that "we need to update that. As a result, we also believe that we may need a deposition or two for purposes of updating our damages model." (Id.). Defense counsel observed that the Federal Circuit ruling "substantially reduced potential damages that could be awarded in this case by order of magnitude," (id., Exh. 3, at 16-17), with which plaintiff's counsel disagreed. (Id., Exh. 3, at 18). Judge Arterton suggested "informal discovery" on the "issue of damages" in order to enhance settlement discussions, in a manner that is "a thoughtful and discrete undertaking, "really formalizing or updating, but not exploratory" (id., Exh. 3, at 20 & 24), and both counsel agreed that the renewed summary judgment motions on Claim 1 could be filed without further discovery. (Id., Exh. 3, at 22). Judge Arterton agreed with plaintiff's counsel that plaintiff could proceed with discovery on damages, provided "it is an update, and I trust that you all can figure out an efficient way to do that." (Id., Exh. 3, at 28-29). Defense counsel thereafter requested a clarification of "damages discovery," agreeing to provide "some supplemental interrogatory responses . . . and perhaps some additional documents." (Id., Exh. 3, at 29-31). Plaintiff's counsel responded that "[w]e're not precluded . . . from supplementing our damage report now to include all damages we may be entitled to under the patent laws." (Id., Exh. 3, at 31). Defense counsel agreed that plaintiff is "entitled" to "includ[e] new data in their report," but added that it would not be "proper" to "generat[e] or postulat[e] a new theory not previously

---

[6]There are two sets of page numbers in the transcript; in this ruling, the Magistrate Judge will rely on the page breaks on the right side of these pages.

4

contained in their expert report, thereby generating a new damages figure based on a new theory." (Id., Exh. 3, at 32; see also id., Exh. 3, at 35-36). Counsel disagreed about the appropriate measure of damages, now that the Second through Fifth Counts were no longer in the lawsuit. (Id., Exh. 3, at 33-43). Judge Arterton observed that "whether or not [a] portion of the plaintiff's expert's testimony needs to be limited in light of what's recoverable under patent law is going to remain for another day." (Id., Exh. 3, at 42).

On April 5, 2005, plaintiff served a subpoena upon non-party Daryl Schillemat of Corning NetOptix and on April 20, 2005, it served Notices of Deposition upon former defendant PEI, and defendants Sick UPA and defendant PEC. (Id., Exh. 4). Plaintiff apparently withdrew the Notice of Deposition upon defendant PEC and non-party SICK-MAIHAK, INC. (Dkt. #248, at 1).

In their Motion for Protective Order and to Quash Subpoenas (Dkt. #242), defendants represent that they have "supplemented their prior discovery responses formally to provide [plaintiff] with a complete update of all U.S. sales of gas cells that might fall within the scope of [plaintiff's] patent." (At 1-2 & 7). Defendants further argue that plaintiff already has conducted numerous depositions with respect to damages. (Id. at 2-4). Defendants also contend that there is no basis to depose defendant Sick UPA, defendant PEC, and former defendant PEI. (Id. at 4-9). With respect to the Schillemat deposition, defendants posit that any testimony would relate to defendant's pending Motion for Summary Judgment, and has no relation at all to the issue of updated damages. (Id. at 9-11).

Plaintiff responds that: (1) the passage of time justifies further discovery (Dkt. #246, at 3-5); (2) the federal rules permit broad discovery (id. at 5-8); and (3) defendants failed to meet their burden under FED. R. CIV. P. 45(c) to quash a subpoena (id. at 8-9). In their reply brief, defendants reassert that the Schillemat deposition has nothing to do with damages

(Dkt. #248, at 3), there is no basis for the PEI deposition (id. at 3-5), and a deposition of Sick UPA is unwarranted (id. at 5-8).

## II. DISCUSSION

Discovery under the Federal Rules of Civil Procedure is broad "regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." See FED. R. CIV. P. 26(b)(1). However, a protective order may be granted

> upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

FED. R. CIV. P. 26(c). The moving party has the burden of establishing "good cause" for the issuance of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. Id. The district court has the discretion to decide whether the protective order should be granted and to what extent. Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)(citations omitted). Where discovery is relevant, "the burden is upon the party seeking . . . a protective order to show good cause." Id. (internal quotations & citation omitted). In order to establish good cause, "[t]he movant must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Waltzer v. Conner, 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985)(citations & internal quotations omitted).

While discovery is broad under the Federal Rules of Civil Procedure, a party does not have an "absolute right to pursue any and every alternative theory of damages, no matter how complicated or tenuous." Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1324 (Fed. Cir. 1990). The "district court has discretion to deny a plaintiff's proposed method of proof of damages which imposes too great a burden on court proceedings." Id. (emphasis omitted). In Micro Motion, the Federal Circuit held that discovery related to

damages is to "be denied where, in the court's judgment, the inquiry lies in a speculative area." Id. at 1326.

When filing a subpoena, a party and his attorney must take reasonable steps to avoid an undue burden or expense on the person subject to the subpoena. FED. R. CIV. P. 45(c)(1). The burden of establishing that a subpoena is "unnecessarily burdensome" rests with the party seeking to have the subpoena quashed. See SEC v. Brigadoon Scotch Dist. Co., 480 F.2d 1047, 1056 (2d Cir. 1973)(citations & emphasis omitted), cert. denied, 415 U.S. 915 (1974). The district court must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986)(citation omitted).

The three discovery items at issue are the subpoena upon non-party Schillemat, and the Notices of Deposition upon former defendant PEI and defendant Sick UPA. As previously indicated, even plaintiff concedes that the Schillemat deposition "would be relevant to defendants' pending motion for summary judgment; should defendants' motion for summary judgment be denied, plaintiff would likely call Mr. Schillemat at trial if defendants pursue their argument." (Dkt. #246, at 9; see also Dkt. #248, at 3). Thus, this deposition is not warranted.

With respect to former defendant PEI, defendants argue that plaintiff has never alleged that PEI infringed its patent and because all claims against PEI have been dismissed, plaintiff cannot proceed with a deposition of PEI without a subpoena. (Dkt. #242, at 5). Defendants further contend that plaintiff does not need to conduct a deposition "to update a damages claim that it has never made in connection with a liability theory that it has never pressed," and in its deposition notice, of the three gas cells about which plaintiff seeks inquiry, PEI produced none of them. (Id. at 6-7 & n.4). As plaintiff recognizes, the

7

"procedural hurdle is easily removed by direct service of a subpoena" on PEI. (Dkt. #246, at 5). Plaintiff asserts that the PEI deposition is necessary because a new, all-metal gas cell was introduced to the market during the time this case was on appeal and plaintiff needs to ascertain if PEI modifies the gas cells they allegedly purchased from Specac, Ltd., before placing it into their gas analyzer instrument. (Id. at 3). As defendants have observed, none of this information relates to an "update" on the issue of damages. (Dkt. #248, at 4-5). Similarly, this deposition is not warranted.

With respect to defendant Sick UPA, as already indicated, defendants argue that defendant Sick UPA has already "formalized" and "updated" its discovery responses, and because Sick UPA is a German corporation, plaintiff's request for a deposition must proceed in accordance with the Hague Convention. (Dkt. #242, at 7-9). Again, as plaintiff recognizes, the "procedural hurdle is easily removed . . . by service of a subpoena on Sick UPA through the Hague Convention." (Dkt. #246, at 5). Plaintiff responds that it needs a deposition "to determine the precision, efficacy and diligence" of defendant Sick UPA's previous search and because "the disclosures of S[ick] UPA's sales in the United States do not indicate the extent to which infringing products manufactured by . . . defendants overseas may have entered US markets through third party distributors. If made knowingly or intentionally, such sales would entitle [plaintiff] to money damages." (Id. at 4 & 7)(citation omitted). In their reply brief, defendants assert that defendant Sick UPA has complied with Judge Arterton's directives at the January 2005 status conference, defendant Sick UPA would not be liable for any sales by non-defendants so that "a deposition on the unknown actions of third parties would be pointless," and that if any deposition is ordered, it should be held in Germany and in compliance with the Hague Convention. (Dkt. #248, at 5-8).

At the January 2005 status conference, Judge Arterton suggested "informal discovery" on the "issue of damages" in order to enhance settlement discussions, in a

8

manner that is "a thoughtful and discrete undertaking" and "really formalizing or updating, but not exploratory" (Dkt. #246, Exh. 3, at 20 & 24), and agreed with plaintiff's counsel that plaintiff could proceed with discovery on damages, provided "it is an update, and I trust that you all can figure out an efficient way to do that." (Id., Exh. 3, at 28-29).   Defendant Sick UPA's production of the additional invoices satisfies Judge Arterton's directives.[7]

### III. CONCLUSION

Accordingly, for the reasons stated above, defendants' Motion for Protective Order and to Quash Subpoenas (Dkt. #242) is granted.[8]

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; Fed. R. Civ. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for the United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)(**written objections to ruling must be filed within ten days after service of same**); FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to the Second Circuit**).

Dated at New Haven, Connecticut, this 13th day of July, 2005.

---

[7] At best, and if the parties so agree, any continued deposition of defendant Sick UPA would be limited to the issue of updated damages and might be conducted "by telephone or other remote electronic means," under FED. R. CIV. P. 30(b)(7).

[8] If any counsel believes that a continued settlement conference before this Magistrate Judge would be productive, he should contact Chambers accordingly.

9

                                                                              /s/
                                          Joan Glazer Margolis
                                          United States Magistrate Judge